# In the United States Court of Federal Claims

No. 15-358C

(E-Filed July 12, 2017)

| | |
|---|---|
| _____ ) | |
| JENNIFER LANCLOS, ) | |
| ) | |
| Plaintiff, ) | Motion for Summary Judgment; |
| ) | RCFC 56; Guarantee of Annuity |
| v. ) | Payments; Periodic Settlement |
| ) | Payments; Principles of Contract |
| THE UNITED STATES OF AMERICA, ) | Interpretation |
| ) | |
| Defendant. ) | |
| _____ ) | |

Jeffrey E. Dahl, San Antonio, TX, for plaintiff.

Ryan M. Majerus, Washington, DC, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge

Plaintiffs in this case allege that defendant breached its obligation to ensure payment pursuant to a settlement agreement executed between the parties in 1986. See ECF No. 1 at 2. Before the court are the parties' cross motions for summary judgment. See ECF Nos.10, 13. For the following reasons, plaintiff's motion is **GRANTED**, and defendant's motion is **DENIED**.

I.   Background

Plaintiff was born in 1982 at the United States Air Force Medical Center at Keesler Air Force Base in Mississippi. See ECF No. 1 at 2. During delivery, plaintiff sustained injuries, and she now suffers from Athetoid Cerebral Palsy. See id. Her parents filed a claim for negligence against the Air Force, and the matter was settled by agreement in 1986. See id.

In the instant lawsuit, plaintiff claims that defendant has violated the terms of that settlement agreement. Specifically, pursuant to the terms of the settlement agreement, defendant purchased an annuity from Executive Life Insurance Company of New York (ELNY) which was to provide for "monthly annuity payments as well as larger payments to be made in five-year increments." Id. at 2-3. The relevant section of the settlement agreement appears as follows:

> We, PATRICK A. LANCLOS, LINDA LANCLOS, both individually and on behalf of our daughter, JENNIFER E. LANCLOS, and JENNIFER E. LANCLOS, by her parents and natural guardians, hereby agree to accept:
>
> 1) For Jennifer Lanclos -
>
>    - $200,000.00 lump sum
>
>    - The purchase of an annuity which will provide the following:
>
>    $1,500.00 per month – from commencement of payment for a period of 5 years
>    $2,000.00 per month – years 6 – 10
>    $2,500.00 per month – years 11 – 15
>    $3,000.00 per month – years 16 – 20
>    $3,500.00 per month – years 21 – 25
>    $4,000.00 per month – years 26 – 30
>    $4,500.00 per month – years 31 – life
>
>    All monthly payments above are guaranteed for 30 years or the life of Jennifer, whichever is longer.

See id. at 8. The settlement agreement provides for several additional payments that are not the subject of the case at bar, including: (1) a schedule for the payment to plaintiff of incremental amounts every five years, (2) a separate settlement amount for plaintiff's parents, and (3) a provision for plaintiff's attorney's fees. See id. at 8-9.

In addition to the payment schedules, the agreement also states: "All payments will commence following issuance of payment checks by the United States Treasury and administrative processing by the annuity provider." Id. at 9. The parties further agreed that the amounts reflected in the schedules were "in full satisfaction and final settlement" of any claims arising out the subject injuries. Id. And plaintiff and her parents "release[d] and forever discharge[d] the United States, its officers, agents and employees from all liability, claims and demands of whatsoever nature arising from the said incident." Id.

Due to financial circumstances unrelated to plaintiff's claim, ELNY became unable to make the scheduled payments in full.  See id. at 3.  In December 2011, plaintiff received notice that her payments would be reduced to approximately forty-two percent of the amount reflected in the settlement agreement.  See id.  The reduced payments began in August 2013.  See id.  Plaintiff alleges, in the complaint, that defendant guaranteed that plaintiff would receive the scheduled payments, but defendant has not made up for the shortfall resulting from the reduced payments.  See ECF No. 1 at 5.  The total shortfall from August 2013 through the time plaintiff filed her complaint in April 2015 was $50,282.40.  See id. at 4.  Plaintiff estimates the future expected shortfall at $681,006.41.  See id. at 5.  As such, plaintiff seeks a total recovery from defendant of $731,288.81.  See id. at 6.

The parties have filed cross-motions for partial summary judgment on the issue of liability based on their respective interpretations of the agreement language.  See ECF Nos. 10, 13.  The matter is now ripe for ruling.

II.     Legal Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The burden then shifts to the nonmoving party to show that a genuine issue of material fact does exist such that the case should proceed to trial.  Id. at 324.

This case presents a question of contract interpretation, an issue properly resolved as a matter of law.  See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996).  When interpreting a contract, the court looks first to the plain language.  See McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).  "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998).  "A contract should be interpreted in such a way that all parts make sense." Hughes Commc'ns Galaxy, Inc. v. United States, 998 F.2d 953, 958 (Fed. Cir. 1993) (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983)).

A contract term is ambiguous if it is "susceptible to more than one reasonable interpretation." McAbee, 97 F.3d at 1435.  Absent ambiguity, the court must give the

3

contract terms their "plain and ordinary meaning," and may not consider evidence extrinsic to the agreement. Id. (citing Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993) and Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994)).

The issue presently before the court, whether defendant guaranteed the payments to plaintiff such that it should be held liable for the shortfalls, does not involve disputed material facts. The parties construct their respective interpretation arguments based on the same language contained in the settlement agreement. As such, summary judgment is appropriate, and to the extent any factual disagreements remain, the court finds them to be immaterial to the question at hand.

III.    Analysis

    A.    Contract Interpretation

The provision at issue states that plaintiff accepts "[t]he purchase of an annuity which will provide" incrementally increased monthly payments, and that "[a]ll monthly payments above are guaranteed for 30 years or the life of Jennifer, whichever is longer," ECF No. 1 at 8, in exchange for releasing her claims against the government, see id. at 9. Plaintiff argues that this language unambiguously obligates defendant to ensure that plaintiff receives the full payments recited in the contract. See ECF No. 10 at 5-6. Defendant also insists that the agreement is unambiguous, but contends that its obligation ended after it paid an initial lump sum and purchased an annuity to make the agreed-upon payments. See ECF No. 13 at 14-20. According to defendant, the guarantee language in the settlement agreement was "parroted" from the annuity contract, and meant only to describe the nature of the annuity to be purchased. See id. at 17.

To support her position, plaintiff relies on the Federal Circuit's decision in Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999). The Massie family entered into a settlement agreement that is remarkably similar to the agreement at issue here. Autumn Massie, who suffered injuries during childbirth at a naval hospital, settled medical malpractice claims by way of an agreement providing for monthly annuity payments. See Massie, 166 F.3d at 1186. As is the case in the present matter, the company responsible for making annuity payments to Ms. Massey became unable to do so, and Ms. Massie sought the shortfall directly from the government. See id. at 1187. In that case, the Federal Circuit reversed the decision from the Court of Federal Claims, and held that the government was liable for the shortfall amounts. See id. at 1190.

In finding that the government was responsible for guaranteeing payments to Ms. Massie, the Federal Circuit relied on a plain reading of the contract terms. The contract at issue in Massie stated that "the annuity 'will result in distributions' and that the payments were 'guaranteed' and 'shall be paid.'" Id. at 1189. The court found this

4

language to be "unambiguously mandatory," and held that the government must be responsible for the payments because "no one else is a party to the Agreement." Id. at 1190. The Federal Circuit rejected the government's argument that it had discharged its duties under the settlement agreement "by purchasing an annuity that was set up to disburse payments as the Agreement requires." Id. at 1189-90. The court specifically held that although the government was free to delegate its obligations to an annuity company, "this delegation does not absolve it of its obligations." Id. at 1190 (citing Olson Plumbing & Heating Co. v. United States, 221 Ct. Cl. 197 (1979)).

The government, for its part, urges the court to follow Nutt v. United States, 837 F.3d 1292 (2016), another case with similar facts that was recently decided by the Federal Circuit. In 1985, Cynthia Nutt entered into a settlement agreement with the government after her husband was hit and killed by a United States Army truck. See id. at 1293-94. The settlement agreement provided for a lump sum payment to the Nutt family, a lump sum payment to the family's attorney, and for the purchase of an annuity, which would in turn provide payments to Ms. Nutt and her son. Id. at 1294. The annuity company later became unable to make the full payments, and the Nutt family sought satisfaction from the government. Id.

The Federal Circuit outlines the relevant portions of the contract at issue in Nutt as follows:

> As soon as practicable after approval of this settlement, the United States of America agrees to purchase annuities which will pay the following amounts:
>
> I.
>
> 1. a. [$60,000 per year] to Cynthia G. Nutt, her estate or designated beneficiary for as long as [she] shall live or for thirty (30) years certain, whichever is later.
>
> b. On each of the following anniversaries of the purchase of the annuity, the following specified lump sum payments shall be paid to Cynthia G. Nutt, her estate or designated beneficiary:  [listing anniversaries and amounts]
>
> 2. On each of the following anniversaries of the purchase of the annuity, the following specified lump sum payments shall be paid to James N. Nutt, Jr., his guardian, his estate or designated beneficiary:   [listing anniversaries and amounts]
>
> * * *

> II.
>
> As soon as practicable after approval of this agreement, the United States of America further agrees to pay [$240,000.00] to Cynthia G. Nutt . . . and a sum equal to twenty percent of the total cost to the United States of the entire settlement distributed to the [Plaintiffs' attorneys].
>
> The payments by the United States set forth above shall operate as full and complete discharge of all payments to be made to and of all claims which might be asserted on behalf of [Plaintiffs,] . . . provided, however, that if the insurance company hereinafter referred to defaults in the performance of its obligations under the annuity agreement with the United States, [Plaintiffs] . . . shall have standing to sue the said insurance company for breach of contract. In such event, the United States shall assist [Plaintiffs], their heirs or personal representatives, in the prosecution of said suit to the extent permitted by applicable laws and regulations.
>
> The United States represents to [Plaintiffs] that the insurance company it selects for the purchase of the annuities will be one which is generally regarded as very sound in the insurance industry and to be among the class or group of insurance companies which are rated Excellent or better by <u>Best's Guide to Life Insurance Companies</u>, 1982 Edition, published by A.M. Best Company, Oldwick, New Jersey 07830.
>
> * * *
>
> The United States will furnish to [Plaintiffs] . . . a certificate of insurance or other evidence of the purchase by the United States of annuities in an amount sufficient to satisfy those obligations of the United States under this Settlement Agreement which are to be satisfied by the purchase of the annuities.

<u>Id.</u> at 1296-97. Like the parties in the present matter, in <u>Nutt</u> both the plaintiffs and the government claimed that the contract unambiguously supported their respective positions. Plaintiffs argued that "the terms of the Agreement 'unambiguously obligate the Government to ensure full payment of all annual payments and periodic lump sums it promised.'" <u>Id.</u> at 1296. In response, the government argued that "the terms of the Agreement 'unambiguously require[ ] only the purchase of annuities.'" <u>Id.</u>

The Federal Circuit affirmed the Court of Federal Claims' decision, and found in favor of the government. The court looked—at a very granular level—to the exact language in the agreement. It reasoned that:

6

> At the outset, the Agreement provides that "the United States of America agrees to purchase annuities which will pay [certain periodic amounts]." We agree with the Court of Federal Claims that the "fairest reading" of this provision is that the Government did not agree to pay future sums, but agreed only to purchase annuities. As the sentence's syntax dictates, the phrase "which will pay" modifies "annuities," signaling that the annuities (and not the Government) will pay the future amounts.

Id. at 1297 (citations omitted). The court held that two additional provisions bolstered its conclusion: (1) the provision allowing plaintiffs to sue the annuity company in the event of default; and (2) the provision noting that the government "will furnish" evidence that it had purchased annuities in an amount sufficient to satisfy the "obligations of the United States under this Settlement Agreement <u>which are to be satisfied by the purchase of the annuities</u>." Id. at 1298 (emphasis added by the Federal Circuit).

Despite the divergent conclusions of <u>Massie</u> and <u>Nutt</u>, the same principle underlies both cases, and is consistent with long-standing precedent. That is: When interpreting a contract, the court must look to the specific language of the contract. See <u>McAbee</u>, 97 F.3d at 1435. As the Federal Circuit explained in <u>Nutt</u>, the <u>Massie</u> case resulted in a different outcome because the contract at issue involved different language. The court identified two specific, material differences. See <u>Nutt</u>, 837 F.3d at 1299. First, the "express guarantee provisions" present in <u>Massie</u> were not present in <u>Nutt</u>. See <u>id.</u> And second, the <u>Nutt</u> agreement expressly "contemplates that in the event of a default by the insurance company, the plaintiffs 'shall have standing to sue the said insurance company for breach of contract,' and 'the United States shall assist . . . in the prosecution of said suit.'" See <u>id.</u>

The specific language of the agreement at issue in the present matter clearly and unambiguously indicates that the government agreed, by basic grammatical function of the terms in the agreement, to guarantee payments to plaintiff. The agreement states, in the future tense, that the annuity to be purchased by the government "will provide" certain monthly payments. ECF No. 1 at 8. The next sentence states, in the present tense, that the monthly payments "are guaranteed," for the longer of thirty years or plaintiff's life. <u>Id.</u> The court concludes that the portion of the agreement reciting what the annuity will provide in the future constitutes a description of what the government is obligated to purchase, while the guarantee, stated in the present tense, is a contemporaneous promise between the parties executing the settlement agreement. Mindful of the guidance provided by the Federal Circuit, a careful reading of the precise contract language supports plaintiff's position. See e.g., <u>Nutt</u>, 837 F.3d at 1297 (carefully parsing the specific contract language by looking to the "syntax" and grammatical structure of relevant sentences). Defendant's arguments to the contrary are not persuasive. The court also notes that the agreement contains none of the language

7

relating to plaintiff's standing to sue the annuity company that the court looked to in Nutt as support for its conclusion.

      B.      Settlement Authority

In an attempt to circumvent any obligation to guarantee payments to plaintiff, defendant contends that because the "Government official whose authority was required to accept the settlement amount approved an amount not to exceed $1,000,000 . . . a settlement costing the United States more than that would be void and unenforceable." ECF No. 13 at 23. According to defendant, the "authorized amount was insufficient to make or guarantee each future payment, conclusively establishing that plaintiff's interpretation of the settlement should be rejected." Id. In support of this argument, the government attaches a payment voucher signed by John P. Davidson, and correspondence with the company that arranged the structured settlement. See ECF No. 13-1 at 4-7.

This argument is unavailing for two reasons. First, these documents are extrinsic to the agreement, and because the court has found that the agreement is unambiguous, the court may not look beyond its corners. See McAbee, 97 F.3d at 1435 (explaining that absent ambiguity, the court must give the contract terms their "plain and ordinary meaning," and may not consider evidence extrinsic to the agreement) (citing Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993) and Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994)).

Assuming, however, that the court found it necessary to look beyond the agreement, the court agrees with plaintiff that the evidence offered by defendant fails to demonstrate that a disputed issue of material fact exists with regard to its contention that the official who reviewed and approved the settlement agreement lacked authority to bind the government to a guarantee provision. See ECF No. 14 at 6-8. The government states in its motion that "the sole Government official with authority to approve payment of the settlement" was D. Lowell Jensen. See ECF No. 13 at 11. Defendant then claims that Mr. Jensen "authorized a lump-sum payment sufficient only to pay the upfront cash and purchase the annuities that plaintiff agreed to accept." Id. at 13-14. Neither the payment voucher nor the correspondence, however, even name Mr. Jensen, much less shed any light on what precisely he reviewed and approved. See ECF No. 13-1 at 4-7.

As such, the plain language of the contract remains the best and legally sufficient evidence of the agreement between the parties.

Defendant raises one additional issue connected to settlement authority that the court wishes to address.[1] Defendant suggests that plaintiff's interpretation of the contract

---

[1] In its supplemental brief, defendant withdrew the arguments related to limited waiver of sovereign immunity under the Federal Tort Claims Act (FTCA) and to an

must be incorrect because its effect would violate current Department of Justice settlement procedures that require settlement amounts to be disbursed as lump-sum payments. See ECF No. 28 at 12-13. Defendant argues that "it must be presumed that the parties intended to comply with the requirement that the Government's settlement obligations be discharged in full, at the time of settlement, out of appropriations made for that purpose." Id. at 13.

The problem with defendant's argument is two-fold. First, as defendant acknowledges, the Federal Circuit held in Nutt that "periodic damage awards under the FTCA may be permissible in lieu of lump-sum payments with one of the recognized exceptions, including by agreement of the parties." Nutt, 837 F.3d at 1296 (citing Reilly v. United States, 863 F.2d 149, 169 n.16 (1st Cir. 1988), and Vanhoy v. United States, 514 F.3d 447, 454 (5th Cir. 2008)). Defendant complains that the court in Nutt did not explain the mechanism by which defendant is permitted to effect periodic payments to settle FTCA claims. See ECF No. 28 at 12. But defendant's confusion on the mechanics of permissible settlement arrangements notwithstanding, this court does not have the authority to contradict the Federal Circuit's finding that periodic payments to settle FTCA claims are permissible when made pursuant to an agreement between the parties.

Furthermore, it is not clear to the court that the result for which plaintiff advocates would involve payments that are fairly characterized as periodic. Plaintiff has raised no objection to defendant's purchase of an annuity to provide periodic payments in its stead. Rather, plaintiff simply seeks an additional payment pursuant to the guarantee the government made now that the annuity has defaulted on its obligation. Defendant has failed to demonstrate either that funds to support that guarantee would necessarily have been included in the initial appropriation, or that seeking an additional appropriation to cover that guarantee would be improper.

IV.  Conclusion

For the foregoing reasons, the court finds that defendant guaranteed the monthly payments to plaintiff, and summary judgment in plaintiff's favor as to liability is appropriate.

Plaintiff's motion for partial summary judgment, ECF No. 10, is **GRANTED**, and defendant's motion for partial summary judgment, ECF No. 13, is **DENIED**. The parties shall confer and file a joint status report informing the court as to the next appropriate steps in the matter, and proposing a schedule regarding the same, on or before **July 31, 2017.**

---

analytical distinction between the FTCA and the Military Claims Act. See ECF No. 28 at 12.

IT IS SO ORDERED.

                                                                   s/ Patricia E. Campbell-Smith
                                                                   PATRICIA E. CAMPBELL-SMITH
                                                                   Judge