# In the United States Court of Federal Claims

No. 15-358C

(E-Filed: January 7, 2021)

| | | |
|---|---|---|
| JENNIFER LANCLOS, | ) | |
| | ) | |
| Plaintiff, | ) | Motion for Reconsideration; |
| | ) | RCFC 59; Summary Judgment; |
| v. | ) | RCFC 56; Settlement |
| | ) | Agreement; Annuities. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Jeffrey E. Dahl, San Antonio, TX, for plaintiff.

Richard P. Schroeder, Trial Attorney, with whom were Ethan P. Davis,[1] Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

On May 21, 2020, defendant filed an amended motion for reconsideration of this court's July 12, 2017 opinion in this matter pursuant to Rules 54(b) and 59(a)(1) of the Rules of the United States Court of Federal Claims (RCFC).  See ECF No. 77.  Plaintiff responded on June 23, 2020, see ECF No. 78, and defendant replied on July 23, 2020, see ECF No. 81.  For the reasons set forth below, defendant's motion for reconsideration is **GRANTED**.

I.   Background

Plaintiff filed her complaint in this matter in 2015, alleging that defendant breached a 1986 settlement agreement resolving claims against the United States Air

---

[1] Joseph H. Hunt was listed as Assistant Attorney General on defendant's amended motion for reconsideration, see ECF No. 77, but was replaced with Ethan P. Davis on defendant's reply, see ECF No. 81.

Force.  See ECF No. 1 (complaint).  The settlement agreement included a provision in which plaintiff agreed to accept in "full satisfaction and final settlement" of her claims:

> The purchase of an annuity which will provide the following:
>
> $1,500 per month – from commencement of payment for a period of five years
> $2,000 per month – years 6-10
> $2,500 per month – years 11-15
> $3,000 per month – years 16-20
> $3,500 per month – years 21-25
> $4,000 per month – years 26-30
> $4,500 per month – years 31-life

Id. at 8, 9.  The agreement further provided that "[a]ll monthly payments above are guaranteed for 30 years or the life of [plaintiff], whichever is longer."  Id. at 8.  Defendant duly purchased the annuity from Executive Life Insurance Company of New York (ELNY), however, after financial difficulties, ELNY became unable to make the payments in full in 2013.  See id. at 3.  Plaintiff alleged that defendant guaranteed the payments in the settlement agreement and that it breached the agreement when it failed to ensure the full payment was made.  See id. at 4-5.

The parties filed cross motions for partial summary judgment as to liability, which the court decided on July 12, 2017.  See ECF No. 38 (opinion and order).  The court granted plaintiff's motion, finding that "[t]he specific language of the agreement at issue in the present matter clearly and unambiguously indicates that the government agreed, by basic grammatical function of the terms in the agreement, to guarantee payments to plaintiff."  Id. at 7.

Thereafter, defendant made several motions in fairly quick succession.  It first moved for reconsideration of the court's opinion on November 22, 2017.  See ECF No. 49.  It then moved for summary judgment as to damages on January 19, 2018, see ECF No. 58, and on February 2, 2018, moved to stay proceedings in this case pending the resolution of several cases involving similar agreements and annuities before the United States Court of Appeals for the Federal Circuit, see ECF No. 59.

The court granted defendant's motion to stay on February 22, 2018, pending the resolution of Hendrickson v. United States, Case No. 17-1996 (Fed. Cir. filed May 9, 2017), and Shaw v. United States, Case No. 17-2136 (Fed. Cir. filed June 8, 2017).  See ECF No. 64 (order).  The court later granted defendant's motion to continue the stay pending the resolution of Langkamp v. United States, Case No. 18-2052 (Fed. Cir. filed June 6, 2018).  See ECF No. 70 (order).  Upon resolution of all three cases at the Federal Circuit, the court lifted the stay in this matter, dismissed defendant's motion for

reconsideration and motion for summary judgment as moot, and directed defendant to file the amended motion for reconsideration now before the court. See ECF No. 74 (order).

II.     Legal Standards

   A.     Motion for Reconsideration

Rule 59(a) governs a motion for reconsideration. The rule provides that rehearing or reconsideration may be granted: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1). Thus, the court, "in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" Biery v. United States, 818 F.3d 704, 711 (Fed. Cir.), cert. denied, 137 S. Ct. 389 (2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)).

   B.     Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). A summary judgment motion is, therefore, properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. Id.

III.    Analysis

   A.     New Federal Circuit Precedent Merits Reconsideration

Defendant argues that the court should reconsider its June 12, 2017 opinion granting plaintiff's partial motion for summary judgment because the Federal Circuit has now made clear that defendant did not guarantee the annuity payments in plaintiff's settlement agreement. See ECF No. 77 at 7. According to defendant, three newly decided Federal Circuit cases create "a more robust body of case law than existed when

3

the Court granted summary judgment." Id. at 6.  And, defendant contends, those cases "now establish[], as a matter of law, that the Government did not guarantee the annuity payments and is not liable to [plaintiff]." Id.  Defendant argues that the change in law thus merits reconsideration.  See id.

Plaintiff responds that the three new decisions do not "constitute a change in controlling law."  ECF No. 78 at 4.  Instead, plaintiff contends, the cases "are interpretations of settlement agreements that are substantially and materially different than the Lanclos settlement agreement." Id.  Defendant replies that plaintiff's "attempts to distinguish [the precedent] are unavailing."  ECF No. 81 at 3.

The court agrees with defendant that the recent Federal Circuit decisions constitute an intervening change in law that merits reconsideration of the court's June 12, 2017 opinion pursuant to RCFC 59(a)(1)(C).  See Biery, 818 F.3d at 711.  In its opinion, the court reviewed and relied upon two Federal Circuit cases—Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999), and Nutt v. United States, 837 F.3d 1292 (Fed. Cir. 2016)—which it characterized as having "divergent conclusions." ECF No. 38 at 4-7.  In the court's view, the newly decided precedent clarifies the divergent conclusions in the case law and offers clear guidance in resolving plaintiff's claim.  Therefore, the court will reconsider its prior opinion.

      B.      Defendant Is Entitled to Judgment as a Matter of Law

Defendant argues that the Federal Circuit cases, in particular Shaw v. United States, 900 F.3d 1379 (Fed. Cir. 2018), clearly establish that the government agreed merely to purchase annuities, not to guarantee the payments thereon.  See ECF No. 77 at 10.  According to defendant, plaintiff's settlement agreement and the agreement in Shaw share material provisions, specifically the term requiring defendant to "purchase an annuity that would make specified periodic payments." Id.  Defendant further contends that, also like the agreement in Shaw, plaintiff's settlement agreement "did not provide that [defendant] would make the annuity payments to [plaintiff]," but rather that the annuity would make those payments.  Id.  Therefore, defendant concludes that, like the Federal Circuit concluded in Shaw, plaintiff's agreement did not make defendant guarantor of the payments and defendant does not have an obligation to make up for any shortfall in payments.  See id.

Defendant further contends that the guarantee language in plaintiff's agreement is "essentially the same type of language" that the Federal Circuit addressed and interpreted in Shaw.  Id. at 12.  That language, defendant argues, referred to the length of time the payments were to be made, not the amount of the payments.  See id.  According to defendant, the court's explanation in Shaw that "in 'the context of annuities [the term] "guaranteed" is generally used as a term of art to establish that an annuity that is measured by an annuitant's life will continue to make payments in the event of death before the end of the guaranteed period,'" should apply in this case as well. Id. (quoting

Shaw, 900 F.3d at 1383).  Defendant also distinguishes the agreements in Massie and Langkamp from plaintiff's agreement, arguing that unlike the agreements in those cases, plaintiff's agreement contains no ongoing obligation on the part of defendant.  See id. at 13-15 (citing Massie, 166 F.3d at 1186, and Langkamp v. United States, 943 F.3d 1346, 1350 (2019)).  Therefore, defendant argues, it is not responsible for any shortfall in plaintiff's annuity payments.  See id. at 17.

Plaintiffs in both Shaw and this case have argued that the language in their settlement agreements obligated the government to make up any shortfall in the enumerated payments.  See Shaw, 900 F.3d at 1381; ECF No. 1 at 4.  The agreement in Shaw provided for "the purchase of annuities that will provide the periodic or other payments set forth" in the agreement, ECF No. 78-2 at 5 (settlement document in Shaw, attached as an exhibit to plaintiff's response).  Similarly, plaintiff's agreement at issue here provided for "the purchase of an annuity which will provide the following" payments set forth in the agreement.  ECF No. 1 at 8.  Moreover, the agreement in Shaw provided that "these monthly payments are guaranteed for a period of twenty (20) years" regardless of the death of the beneficiary, ECF No. 78-2 at 5, and plaintiff's agreement provided that "all monthly payments are guaranteed for 30 years or the life of [plaintiff] whichever is longer," ECF No. 1 at 8.

Seeking to distinguish these agreements, plaintiff argues that the settlement agreement at issue in her case is materially different than that in Shaw.  See ECF No. 78 at 4-5.  Specifically, plaintiff contends that the agreement in Shaw "expressly limit[ed] the consideration for the release to lump sum payments and the purchase of annuities," id. at 4, while the consideration for release in plaintiff's settlement included the guarantee of the monthly annuity payments.  Id. at 4-5, 8-9.  Additionally, plaintiff argues, the meaning of the guarantee in the Shaw settlement was "explained in detail within the settlement agreement," id. at 5, and it was not in her settlement.  See id. at 4-5, 10-11.  Thus, according to plaintiff, the Federal Circuit precedent supports her position that the language in her settlement agreement amounted to "mandatory obligations of [defendant] to pay in the event of default by the primary obligor."  Id. at 9 (citing Massie, 166 F.3d at 1189); see also id. at 11.

In the court's view, the distinctions plaintiff raises are insufficient to overcome the language present in plaintiff's agreement that the Federal Circuit construed in Shaw.  The Circuit reviewed the guarantee language in the Shaw settlement and concluded that:

> [R]elatively little significance can be given to this guarantee language.  In the context of annuities, "guaranteed" is generally used as a term of art to establish that an annuity that is measured by an annuitant's life will continue to make payments in the event of death before the end of the guaranteed period.  In the Shaws' agreement, the use of the term "guaranteed" indicates that the monthly payments will be made until 20 years have passed or until the death of the annuitant, whichever is later.

5

Shaw, 900 F.3d at 1383-84 (footnote omitted). The Federal Circuit set forth its view of the express language in the Shaw contract, and, contrary to plaintiff's assertions, the court does not find that the absence of the precise language in the Shaw agreement from plaintiff's agreement triggers a different interpretation. The court does not perceive, and plaintiff has not presented, any material difference between the language in plaintiff's agreement and the language in the Shaw agreement. Without more, the presence of certain explanatory language in the Shaw agreement, that is not present in plaintiff's agreement, is not sufficient to distinguish the controlling language that is present in both agreements. The court, therefore, must conclude that the Federal Circuit's interpretation governs in this case, and the guarantee language applies to the term of the payments, rather than to the amount of the payments. See id.

In Shaw, the Federal Circuit also distinguished the agreement in Massie, noting that the agreement in that case "described the periodic payments as being made 'on behalf of the United States'" and finding "no such language" in the Shaw settlement. Id. at 1384 (quoting Massie v. United States, 40 Fed. Cl. 151, 155 (1997)). The Circuit further stated that the Shaw agreement "did not provide that the payments made by the annuities would discharge the government's obligations." Id.

Plaintiff has pointed to no language in the instant agreement that is similar to the language in Massie and which would indicate an ongoing obligation by defendant to make payments. See id. And, like in Shaw, the agreement here does not provide that the payments made by the annuities discharge defendant's obligation; rather, the agreement provides for the "purchase of an annuity," and a lump sum payment, "in full satisfaction and final settlement" of plaintiff's claims. ECF No. 1 at 8-9.

Because there is no dispute of material fact in this case, and because Federal Circuit precedent controls, defendant is entitled to judgment as a matter of law as to plaintiff's claims.

IV.     Conclusion

Accordingly, for the foregoing reasons, defendant's motion for reconsideration, ECF No. 77, is **GRANTED**, and the court's July 12, 2017 opinion, ECF No. 38, is **VACATED**. The clerk's office is directed to **DISMISS** plaintiff's complaint with prejudice and **ENTER** final judgment in defendant's favor.

IT IS SO ORDERED.

> s/Patricia E. Campbell-Smith
> PATRICIA E. CAMPBELL-SMITH
> Judge